O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. CR 06-00466 DDP |
|---|---|---|
| Plaintiff, | ) | **ORDER DENYING MOTION TO SUPPRESS** |
| v. | ) | [Motion filed on April 15, 2008] |
| DEON EDWARD LOPEZ et al., | ) | [Motion for Joinder filed by Defendant Lopez on April 24, 2008] |
| Defendants. | ) | |

This matter is before the Court on Defendant James Greer's motion to suppress results of wiretap surveillance. Greer's motion is joined by co-Defendant Lopez. After considering the papers submitted by the parties and considering the arguments therein, the Court denies the motion and adopts the following order.

///

///

**I.     BACKGROUND**

Defendants Greer and Lopez have been charged in an indictment with violations of federal drug and conspiracy laws. Defendants are alleged to have been part of a network involved in distribution of large amounts of cocaine. While investigating this case, the Government sought permission from the Court to conduct wiretap surveillance.

On February 18, 2005 ("February Order"), Judge George P. Schiavelli authorized a Title III wiretap for Target Telephones # 1 and # 2. On March 24, 2005, Judge Schiavelli approved a second request from the Government for continuance of the wiretaps authorized in the February Order for Target Telephones # 1 and # 2, and permission to conduct wiretaps for additional telephone lines Target Telephones # 3 and # 4. ("March Order"). On May 12, 2005, Judge Schiavelli approved wiretaps for Target Telephones # 6, # 7, # 8, and # 9.

Defendant Greer, joined by Lopez, moves to suppress the intercepted calls obtained through the wiretaps. Defendant challenges the wiretaps on three grounds:

(1)   The Government did not have the requisite authorization from the Attorney General to seek or obtain approval of wiretap surveillance;

(2)   Any calls intercepted after March 9, 2005 must be suppressed because the orders approving the wiretaps are facially insufficient in claiming to be made pursuant to previous court orders on dates when no orders were in fact made.

(3)   The Government has not established necessity for the wiretap.

**II. DISCUSSION**

    A.   <u>Wiretap Requirements</u>

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 provides the authority for wiretap surveillance as part of a criminal investigation:

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General or any Deputy Assistant Attorney General in the Criminal Division <u>specially designated by the Attorney General</u>, may authorize an application to a Federal judge . . . for . . . an order authorizing or approving the interception of wire or oral communications. . . .

18 U.S.C. § 2516 (1988) (emphasis added).

"Wiretap evidence obtained in violation of the Act may not be used at a criminal trial. <u>United States v. Staffeldt</u>, 451 F.3d 578, 580 (9th Cir. 2006) (citing 18 U.S.C. § 2515). Violations for which suppression is appropriate include when: (1) "the communication was unlawfully intercepted"; (2) the application or approval order "under which it was intercepted is insufficient on its face"; 2 or (3) "the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a).

    B.   <u>Analysis</u>

        1.   <u>Attorney General Authorization</u>

In Order No. 2407-2001 ("Ashcroft Order"), Attorney General John Ashcroft designated any Assistant Attorney General, Acting Assistant Attorney General, Deputy Assistant Attorney General, and

3

Acting Deputy Assistant Attorney General of the Criminal Division to make applications for court orders approving interception of wire and oral communications.  (BS 744-45).[1]  On February 5, 2005, Ashcroft was replaced by Attorney General Alberto R. Gonzales.  On February 15, 2005, Deputy Assistant Attorney General John Keeney signed the memorandum authorizing application for the wiretap of Target Telephones #1 and #2.  On February 18, 2005, the Court approved the wiretap application.  On February 24, 2005, in Order No. 2758-2005 ("Gonzales Order"), Gonzales signed an order, essentially identical to the Ashcroft Order, which provided authority for certain Department of Justice officials to seek approval of wiretaps.[2]  The Gonzales' Order also revoked the Ashcroft Order.  (BS 873).

Defendant argues that John Keeney had no authority to make the February, 16, 2005 wiretap application because John Ashcroft had already resigned as Attorney General, and thus, the Ashcroft Order could no longer confer authority on Keeney to apply for a wiretap. This argument has been roundly rejected.  An Attorney General's resignation does not by itself render orders signed prior to the resignation ineffective, nor void the authority of the Attorney General's designees.  See United States v. Edmond 718 F. Supp. 988, 991 (D.D.C. 1989) ("The fact that Richard and Keeney were operating pursuant to an Order issued by departed Attorney General Meese in no way vitiates their authority."); see also U.S. v. Anderson, 39

---

[1] Defendant has provided the relevant wiretap applications and orders to the motion to suppress.  All citations herein are to the bate-stamped numbers ("BS") in those documents.

[2] Order No. 2758-2005 became effective on February 25, 2005, the day after Gonzales signed it.

4

F.3d 331, 340 (D.C. Cir. 1994) (finding that every circuit to have considered this expiration argument held "under principles of administrative continuity [that] a designation of officials by one Attorney General continues in effect through a change in Attorneys General so long as the people designated continue to hold their offices"); United States v. Lawson, 780 F.2d 535, 539 (6th Cir. 1985) (holding that Attorney General Civiletti's authorization order in 1981 permitted an Assistant Attorney General to approve a wiretap application in 1983).

Therefore, Ashcroft's resignation did not void Keeney's authority to apply for the wiretap in this case.[3] Neither did the Gonzales Order's revocation of the Ashcroft Order void Keeney's authority. At the time the application was made, Keeney had the authority to approve the original wiretap application pursuant to the Ashcroft Order, which remained in effect despite Ashcroft's resignation. The wiretap application also was not rendered facially insufficient by virtue of the Gonzales Order. The Court notes that Keeney, as a Deputy Attorney General, was designated to authorize wiretap applications under the Gonzales' Order. (See BS 833). When considering the facial sufficiency of a wiretap application in United States v. Chavez, 416 U.S. 562 (1974), the U.S. Supreme Court did not suppress wiretap evidence when an application identified Assistant Attorney General Wilson as the

---

[3] Defendant cites United States v. Reyna, 218 F.3d 1108 (9th Cir. 2000), for the proposition that the Government may not seek a wiretap unless an authorized official approves the wiretap application. Id. at 1110-1111. This is a correct statement of law, but Reyna is distinguishable. In Reyna, there was no prior approval of the wiretap by an authorized official. Id. Here, on the other hand, Keeney was authorized to approve the wiretap application.

person who authorized the application to be made, when in fact the Attorney General had authorized the application.  The Supreme Court did not find the application facially insufficient because "[i]n no realistic sense . . . [could] it be said that the order failed to identify an authorizing official who possessed statutory power to approve the making of the application."  Id. at 574.  Similarly here, Keeney had authority to approve the making of the application, whether under the Ashcroft Order or the Gonzales Order.[4]

   B.   Facial Sufficiency of 15 Day Reports

Defendant next argues that two Court Orders in connection with the Government's 15 Day Reports were facially insufficient.  First, on March 7, 2005, the Government filed a 15 day report related to the wiretap approved by the Court in its February Order.  In the Court's Order of March 9, 2007 authorizing continued wiretapping, it states:

> The court has reviewed this report and authorizes the continued interception of Target Telephone, pursuant to its <u>April 2, 2004</u>, Order.  This report shall be sealed until further Order of the court.  IT IS SO ORDERED.

(BS 839).  There was no April 2, 2004 Order for this case.  A similar error occurred in the Court's Order of April 11, 2005 regarding the Government's 15 day report filed on April 7, 2005. The Government admits that Court Orders contained incorrect dates,

---

   [4]For the reasons articulated, the Court also finds unavailing Defendant's suggestion that a failure to notify the Court of the Gonzales Order in the 15 Day Report calls for suppression of the wiretap evidence.  The fact of the matter is that the wiretap application was authorized by an appropriate designated official.

6

but argues that these were mere typographical errors errors that do not warrant suppression of the wiretap evidence.

The Court finds no indication that the incorrect dates were anything but clerical errors. In approving continued interceptions in its Orders, Judge Schiavelli was aware of the previous Order approving the original wiretap application. Judge Schiavelli did not express any intent to revoke or modify the cannot be said that the wiretap surveillance in this case. Under these circumstances, it cannot be said that the clerical errors undermine the facial sufficiency of the wiretap applications.

### C. Necessity

In this motion, Defendant also argues that the Government has failed to satisfy the necessity requirement for a wiretap. A wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." 18 U.S.C. 2518(1)(c). This is known as the "necessity" requirement. See, e.g., United States v. Gonzalez, 412 F.3d 1102, 1112 (9th Cir. 2005). The necessity requirement "exists in order to limit the use of wiretaps, which are highly intrusive." United States v. Bennett, 219 F.3d 1117, 1121 (9th Cir. 2000). To satisfy the requirement, the Government's application must set forth specific facts to support why other investigative procedures are inadequate and wiretapping is necessary. See United States v. Ruggiero, 726 F.2d 913, 924 (2d Cir. 1984); United States v. Martinez, 588 F.2d 1227, 1231 (9th Cir. 1978).

1         Here, the Government's wiretap application was made in
2    connection with an investigation, which started in April 2004, of
3    the Vineland Boys Gang ("VBS").  In support of the wiretap
4    application, the Government submitted the affidavit of Craig
5    Harris, special agent with the Federal Bureau of Investigation
6    assigned to the Southern California Drug Task Force.  According to
7    the affidavit, VBS was receiving drugs for distribution from a
8    large-scale drug trafficking organization.  A person identified as
9    Viejon was the drug supplier - apparently under the auspices of
10   this large-scale drug trafficking organization - to persons known
11   as Cassillas, Aranda, and other VBS members.  (Aff. 11, 754-755.)
12   After the Government submitted the wiretap application, it learned
13   that Viejon referred to one Mauro Galindo.  In what follows, Viejon
14   and Galindo refer to the same person.
15        The Government's affidavit identified Target Telephones #1 and
16   #2 as telephones used by Galindo in the furtherance of his illegal
17   drug activities, and thus sought approval to wiretap Galindo's
18   telephone in order to intercept his communications.  The affidavit
19   indicated that the objective of its investigation was discovery of
20        (1) the full scope and identification of key personnel of
21        Viejon's illegal drug trafficking organization; (2) the
22        identity and role of Viejon's suppliers of cocaine and/or
23        other drugs or controlled substances to the identified
24        conspirators, along with their organizations; (3) the
25        identity of main customers of Viejon and the other identified
26        conspirators; (4) the stash locations where cocaine and/or
27        other drugs are stored prior to distribution by Viejon and his
28        sources of supply; (5) the management and disposition of

```
1      proceeds generated by the organization's drug trafficking; and
2      (6) methods and routes used to import cocaine and/or other
3      drugs into the United States.
4  (Aff. 27, 766-767.)
```

The affidavit also purported to describe the investigative techniques used prior to the wiretap application, the reasons that those techniques had failed and that additional techniques would fail to fully achieve the objective of the investigation, and accordingly, why the wiretap is necessary. The Court has synthesized the statements from the affidavit in chart format:

| Investigative Activity | Reason Inadequate |
|---|---|
| (1) Prior telephone interceptions of communications involving Galindo, Cassillas, Aranda, and others. (Aff. ¶¶ 30-33, BS 767-769.) | • Since Galindo is the supplier to Cassillas and Cassillas to Aranda and others, interceptions of Cassillas and Aranda has not provided information regarding Galindo's drug suppliers, location of stash houses, the methods of distributing the drugs, and methods to launder drug sale proceeds.<br>• Prior interceptions of others have not revealed information about Galindo. |

9

| | |
|---|---|
| (2) Confidential Informants (Aff. ¶¶ 30-41, BS 767-75.) | • Confidential informants have provided information on Cassillas and Benavides, but have not provided information pertaining to investigation of Galindo and his organization.<br>• As Cassillas is not a member of Galindo's organization, affiant expresses belief that informants could not obtain information from Cassillas regarding Galindo's organization, sources of supply, or other customers. Furthermore, no informants are currently able to purchase drugs from Cassillas.<br>• Confidential informants (CS-1 and CS-2) had direct contact with Benavides by arranging to purchase drugs from him. However, CS-1 was unable to provide information on Galindo and it is believed CS-2 is no longer trusted by Benavides after CS-2 refused to complete a drug purchase. While a "buy-bust" involving Benavides is possible, would likely lead to some arrests, and identification of some drug stash locations, it would not result in identifying all aspects of Galindo's organization.<br>• Generally concludes that no informant will be able to infiltrate the organization at a high enough level to achieve objectives of the investigation. |

| | |
|---|---|
| (3) Physical Surveillance (Aff. ¶¶ 42-49, BS 775-81.) | • Although physical surveillance has obtained importance information and resulted in seizure of drugs, has been unsuccessful in identifying Galindo's address or determining the scope of his organization.<br>• There has also been significant counter-surveillance measures, as discussed in examples by affiant. |
| (4) Financial Investigation (Aff. ¶ 50, BS 781-82) | • Unable to conduct a financial investigation of Galindo, because at the time of the application he was not identified and known only as Viejon. |
| (5) Search Warrants, Interviews, Trash Searches, Etc. (Aff. ¶¶ 51-59, BS 782-86) | • The subjects of investigation are alert to the possibility of searches and may be using temporary locations.  It is difficult to assess the timing of a search under these circumstances.<br>• A trash search may not provide useful information where Galindo's address is unknown. Also, drug traffickers tend to destroy evidence rather than dispose of it in the trash. |

11

| | |
|---|---|
| (6) Pen Registers, Trap-Trace Devices, and Toll Analysis (Aff. ¶¶ 60-63, BS 786-87) | • Agents have used these investigative tools. Pen register and toll information provide frequency and identifying information of calls made from a telephone. A trap and trace device identifies the telephone number of any telephone that dials that the subject phone. These methods will not provide the identities of persons called or the content of the conversations. |

In light of the stated objective of the investigation, the facts articulated in the affidavit, and the relevant case law on necessity, the Court finds that the affidavit provided an adequate basis for approval of the wiretap application. As this was a conspiracy investigation, the Court must evaluate necessity by reference to the objective of the investigation; if the Government shows that ordinary investigative techniques would not disclose information covering the scope of the drug trafficking enterprise under investigation, then it has established necessity for the wiretap. See United States v. McGuire, 307 F.3d 1192, 1197-99 (9th Cir. 2002). In the Court's view, the Government's affidavit set forth specific facts regarding the state of the investigation at the time it sought the wiretap in question and sufficiently articulated the reasons why other investigative techniques would not serve the purpose of identifying the particulars regarding Galindo and his drug trafficking organization. Given the Government's necessity showing, the Court finds that Judge Schiavelli's decision to approve the wiretap was appropriate.

Defendant's challenges to the necessity of the wiretap do not undermine this conclusion. Defendant first argues that the affidavit lacks factual support to establish the necessity of a wiretap, especially when traditional investigative techniques had proven successful. Defendant asserts that the Government offers conclusory allegations that informants did not provide the necessary information regarding the conspiracy and downplays the usefulness of confidential informants. However, the availability of informants - even those with some useful information - does not belie a finding of necessity when informants are unable to disclose the full nature and extent of the conspiracy, and are well-recognized as having suspect credibility. See, e.g., United States v. Canales Gomez, 358 F.3d 1221, 1226-27 (9th Cir. 2004); United States v. Bennett, 219 F.3d 1117, 1122 (9th Cir. 2000). Similarly, that the use of pen registers and similar tracing tools, United States v. Decoud, 456 F.3d 996, 1007 (9th Cir. 2006), and physical surveillance, United States v. Brown, 761 F.2d 1272, 1276 (9th Cir. 1985), are productive to some degree does not preclude a finding of necessity.

Defendant also asserts that the success of prior interceptions and the absence of investigation of financial records as reasons militating against a finding of necessity. Yet the Government's affidavit explained in some detail that those investigative activities had not or could not uncover necessary information with respect to Galindo's organization. Specifically, the prior interceptions only provided information regarding Galindo's interactions with Cassillas and Aranda, and did not touch upon Galindo's relationship to other suppliers or customers, did not

reveal stash locations, or disclose other details concerning Galindo's organization.  Furthermore, the financial investigation would be difficult since Galindo had not been specifically identified at that time.

Nevertheless, Defendant raises a more fundamental challenge to the articulated scope of the investigation.  Defendant contends that the Government's stated objective for the investigation was overbroad, unrealistic, and unattainable.  Defendant suggests that the Government utilized a "vast investigative purpose" to ease its burden of showing necessity and to justify multiple requests for wiretap approvals in this case.  (Mot. 28, citing United States v. Blackmon, 273 F.3d 1204, 1211 (9th Cir. 2001).)  These requests were approved, Defendant argues, even though it was unlikely that Galindo would reveal the identities of suppliers or discuss the methods of importation and distribution of cocaine.  Defendant, therefore, questions the accuracy of the Government's contention that the wiretaps were needed to fully achieve its purpose of identifying the various aspects of Galindo's organization.  Defendant also takes issue with what it views to be the Government's changing conception of the investigative objective, specifically after the killing of Galindo.

The Court agrees that judges should be ever vigilant to ensure that the objective of an investigation is not articulated in such a broad fashion as to permit unjustified intrusions through wiretap surveillance.  The requirement of a "full and complete statement of the facts" under 18 U.S.C. § 2518(1)(c) is an important safeguard to protect against Government over-reaching.  Given the facts outlined in the wiretap application here, the Court does not

14

consider the objective of this investigation to have been so overbroad as to allow unlimited wiretap surveillance. Rather, the affidavit adequately identified the basis for its objective in documenting its investigative activities prior to the Government's wiretap application and the reasons those activities were insufficient to identify the particulars surrounding Galindo's organization. Unlike ordinary investigative techniques, a wiretap on Galindo's phone could reveal his suppliers, additional customers, and details on the operations of his organization.[5] The Court, therefore, finds that the wiretap was supported by necessity.

**III. CONCLUSION**

For the foregoing reasons, the Court DENIES the motion to suppress the wiretap evidence.

IT IS SO ORDERED.

Dated: May 19, 2008

DEAN D. PREGERSON
United States District Judge

---

[5] The Court notes that the Ninth Circuit has affirmed wiretap approvals when similar investigative objectives were involved. See, e.g., Canales Gomez, 358 F.3d at 1226-27.